United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB BENJAMIN STERNBERG, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TOWN OF DANVILLE, et al.,<br><br>Defendants. | Case No.  15-cv-01878-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS THE FIRST AMENDED COMPLAINT BY DEFENDANTS TOWN OF DANVILLE AND COUNTY OF CONTRA COSTA**<br><br>Re: Dkt. No. 37 |

Plaintiffs Jacob Sternberg and Alan Bishoff bring this action under 42 U.S.C. § 1983 and various state laws against the Town of Danville, the County of Contra Costa, and four police officers.  The Town of Danville and the County of Contra Costa now move to dismiss the first amended complaint for failure to state a claim.  The motion is scheduled for a hearing on December 18, 2015.  Pursuant to Local Rule 7-1(b), the Court determines this motion is appropriate for resolution without oral argument and **VACATES** the hearing.  For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part defendants' motion to dismiss.

## BACKGROUND

### I.      Factual Background

It is alleged that on April 17, 2014, plaintiffs Jacob Benjamin Sternberg and Alan Mark Bishoff drove to a Trader Joe's grocery store in Danville, CA.  First Amended Compl. ("FAC"), Dkt. No. 35, ¶ 13.  Once in the store parking lot, plaintiffs proceeded to the "dumpster corral which, while enclosed with metal doors, was not locked." *Id.*  Plaintiffs removed discarded food items from the dumpster, placed the items in their car, and drove away. *Id.*  Plaintiffs were later

1   pulled over by defendant police officers Jeff Kellogg and Andrew Burns who claimed plaintiffs

2   were "going a little fast," although plaintiffs allege they were not speeding. *Id.*

3          During the stop, the officers noticed the food in the back seat of the car, and asked

4   plaintiffs what it was. *Id.*  Plaintiffs responded that it was food. *Id.*  When asked where they

5   obtained the food, plaintiffs refused to provide any further detail and stated that "they were law

6   abiding citizens, and were looking forward to continuing on their way." *Id.*  The officers then

7   asked plaintiffs whether they had any illegal drugs or weapons in the car, to which they responded

8   they did not. *Id.*

9          A few moments later defendant officer Rossberg arrived on the scene[1] and began searching

10  the exterior of the car with a police dog. *Id.*  Plaintiffs allege that defendants falsely claimed that

11  the dog sensed the presence of drugs, and therefore performed a second search despite plaintiffs'

12  objections and refusal to give consent.[2] *Id.*  Before the second search, plaintiffs were asked to exit

13  the vehicle and stand facing the vehicle with their hands behind their heads. *Id.*  Plaintiffs

14  complied with this order. *Id.*  During this time, one of the officers came up behind plaintiff

15  Sternberg and grabbed his hands as well as clump of his hair, causing him pain. *Id.*  When

16  Sternberg communicated that he was in pain, the officer pulled harder so as to cause more pain.

17  *Id.*  Plaintiffs were eventually handcuffed and seated on the curb during the duration of the search.

18  *Id.*

19         Plaintiffs were then moved to the back of a police car, with their hands handcuffed behind

20  their backs. *Id.*  Sternberg complained that his handcuffs were causing him pain, and asked if he

21  could be handcuffed with his hands in front of him. *Id.*  This request was refused. *Id.*  After a

22  "substantial period of time," an employee of Trader Joe's arrived at the scene. *Id.*  The employee

23  examined the food that plaintiffs had taken and confirmed that it was discarded food held in an

24  unsecured dumpster. *Id.*  The employee stated that the store did not desire for plaintiffs to be

25  _____

26         [1]  It is unclear from the FAC at what point officer Rossberg arrived on the scene.
    Additionally, the FAC alleges that defendant Sgt. Jimenez was the on-scene supervisor during the

27  incident, but it is not clear at what point he arrived on the scene.  FAC ¶ 8.

28         [2]  Although not stated in the FAC, it appears that the second search was done inside the
    vehicle.

United States District Court
Northern District of California

prosecuted.  *Id.*

Plaintiffs were later asked by one of the defendant officers if they wished to be informed of their rights.  *Id.*  Plaintiffs responded that they would like to be so informed, and invoked their right to speak with an attorney as soon as that right was communicated to them.  *Id.*  After remaining in the backseat of the police car for several hours, plaintiffs were told that they were being arrested and charged with burglary, conspiracy, receiving stolen property, and possession of a controlled substance.  *Id.*  Plaintiffs were booked, and transported to Contra Costa County Jail in Richmond, CA, where they remained for five days.  *Id.*  No criminal charges were ever filed. Plaintiffs also never received a speeding ticket.  *Id.*

Plaintiffs allege that defendants Kellogg, Burns, Rossberg, and Jimenez were employed by the Town of Danville ("Danville") and/or the County of Contra Costa (the "County"), and/or were independent contractors of Danville.  *Id.* ¶¶ 8, 16.  Pursuant to a contract subject to California Government Code §§ 55631-55634 and California Government Code § 6500 *et seq.*, the County provides Danville with law enforcement personnel, and Danville reimburses the County for the costs.  *Id.* ¶ 6;  Dkt. No. 35, Ex. A at 23.

## II.    Procedural Background

On April 27, 2015, plaintiffs filed a complaint alleging civil rights violations against Danville and several individuals as defendants.  Dkt. No. 1.  After learning of the contract between Danville and the County, plaintiffs filed a motion to amend the complaint to add the County as a defendant.  Dkt. No. 23.  Danville filed a motion for judgment on the pleadings.  Dkt. No. 24. The Court granted the motion to amend the complaint and denied the motion for judgment on the pleadings.  Dkt. No. 34.

On September 9, 2015, plaintiffs filed the FAC alleging eleven causes of action: (1) 42 U.S.C. § 1983 against individual defendants; (2) 42 U.S.C. § 1983 (*Monell* liability); (3) 42 U.S.C. § 1983 (unlawful customs, policies, habits, or procedures); (4) California Civil Code § 52.1(b); (5) false arrest; (6) false imprisonment; (7) intentional infliction of emotional distress; (8) negligence; (9) 42 U.S.C. § 1983 (negligent selection, training, retention, supervision, investigation, and

United States District Court
Northern District of California

3

discipline); (10) conspiracy; and (11) injunctive relief and declaratory relief.  Dkt. No. 35.
Plaintiffs named as defendants Danville, the County, Kellogg, Burns, Rossberg, Jimenez, and
several Doe defendants.[3]  *Id.*  Individual defendants Kellogg, Burns, Rossberg, and Jimenez filed
an answer to the FAC.  Dkt. No. 36.  By the present motion, Danville and the County move to
dismiss the FAC for failure to state a claim.  Dkt. No. 37.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint
if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to
dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its
face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard
requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant
has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While courts do not require
"heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to
relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether a plaintiff has stated a claim upon which relief can be granted, the
court must assume that the plaintiff's allegations are true and must draw all reasonable inferences
in the plaintiff's favor.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).
However, the court is not required to "accept as true allegations that are merely conclusory,
unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536
F.3d 1049, 1055 (9th Cir. 2008). The court, for example, need not accept as true "allegations that
contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State
Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, the court may not consider materials beyond the pleadings when ruling
on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).
However, pursuant to Federal Rule of Evidence 201, the court may take judicial notice of "matters

---

[3] Sheriff David Livingston was also named as a defendant in the FAC, but was voluntarily
dismissed without prejudice.  Dkt. No. 46.

United States District Court
Northern District of California

of public record," such as prior court proceedings.  *Id.* at 688-89.  The court may also consider "documents attached to the complaint [and] documents incorporated by reference in the complaint . . . without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

If the court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I.   Claims Under 42 U.S.C. § 1983 (Claims Two, Three, and Nine)

Danville and the County (hereafter "defendants") move to dismiss plaintiffs' three claims under 42 U.S.C. § 1983.  Dkt. 37 at 4-10.

"Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Id.* To state a *Monell* claim, a plaintiff must establish: (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy, custom, or practice; (3) that the policy, custom, or practice amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy, custom, or practice was the moving force behind the constitutional violation.  *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011); *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012).  Defendants argue that, for all three *Monell* claims, plaintiffs have failed to allege sufficient factual allegations demonstrating elements two, three, and four.  Dkt. No. 37 at 5.

The Ninth Circuit has applied a two-part rule for determining whether factual allegations

United States District Court
Northern District of California

are properly pled for a *Monell* claim, stating:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*AE*, 666 F.3d at 637 (quoting *Starr v. Baca*, 652 F.3d 1203, 1216 (9th Cir. 2011)).[4]

Plaintiffs allege three *Monell* claims against Danville and the County for violations of the First, Fourth, and Fifth Amendments.  However, the theories of liability upon which the claims are based are somewhat unclear and overlapping.  The Court attempts to summarize the claims, as follows:

Claim Two, titled "*Monell*," alleges that: (1) Danville and/or the County had notice of a pattern or practice of constitutional violations[5] by the individual defendants and other law enforcement personnel; (2) Danville and/or the County were deliberately indifferent to this pattern or practice by failing to take necessary measures, such as adequate discipline, supervision, and training, to stop the conduct; and (3) the lack of response demonstrates ratification of the unconstitutional acts and the existence of an informal custom or policy tolerating the unconstitutional acts; and (4) the acts of the individual defendants are the direct and proximate

---

[4] Prior to the decisions in *Twombly* and *Iqbal*, the Ninth Circuit held that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988).  "*Karim-Panahi* has not been overruled, but the Ninth Circuit has recognized that, under the Supreme Court's recent pleading jurisprudence, it is no longer clear that, without more, an allegation that an officer's conduct 'conformed to an official policy, custom, or practice' continues to be sufficient to state a claim under *Monell*."  *Mateos-Sandoval v. Cnty. of Sonoma*, 942 F. Supp. 2d 890, 898-99 (N.D. Cal. 2013) (citing *AE*, 666 F.3d at 637-38).  In assessing the sufficiency of facts alleged for a § 1983 supervisory liability claim, the Ninth Circuit compared *Twombly* and *Iqbal* with other Supreme Court decisions on pleading standards and adopted the two-part rule stated above.  *See Starr v. Baca*, 652 F.3d 1203, 1216 (9th Cir. 2011).  In *AE*, the Ninth Circuit applied the *Starr* two-part rule to *Monell* claims.  *See AE*, 666 F.3d at 637.

[5] The FAC alleges constitutional violations through the use of excessive force, violations of citizens' First, Fourth, and Fifth Amendment rights, fabrication of incident reports, wrongful seizures, arrests without probable cause, and the presentation of false criminal charges against citizens in violation of and in retaliation for the exercise of their First, Fourth, and/or Fifth Amendment rights.  FAC ¶ 22.

United States District Court
Northern District of California

result of the deliberate indifference and policy.  FAC ¶¶ 22-23.

Claim Three, titled "Unlawful Customs, Policies, Habits, or Procedures," alleges that: (1) Danville and the County directed, encouraged, allowed, or ratified by policymakers customs, policies, practices, or procedures of (a) failing to supervise or discipline officers for conduct causing civil rights violations, and/or (b) failing to institute, maintain, or effectively administer appropriate (re)training on free speech rights, unlawful seizures, and/or the use of force (FAC ¶ 25);  (2) alternatively, Danville and the County failed to properly oversee, enforce, and properly carry out policies and training on free speech rights, unlawful seizures, and/or the use of force (FAC ¶ 26); (3) these customs, policies, practices, and/or procedures caused the deprivations of plaintiffs' constitutional rights (FAC ¶ 27); and (4) plaintiffs' harm was a proximate result of the customs, policies, practices, and/or procedures (FAC ¶ 28).

Claim Nine, titled "Negligent Selection, Training, Retention, Supervision, Investigation, and Discipline," alleges that: (1) Danville and the County have a duty of care to properly select, train, retain, supervise, investigate, and discipline the individual defendants (FAC ¶ 52); (2) Danville and the County, through their supervisory officials, received notice on several occasions of a pattern and practice of unconstitutional acts by the individual defendants and other law enforcement personnel (FAC ¶ 53); (3) Danville and the County were deliberately indifferent to this pattern and practice by failing to take necessary measures, such as providing adequate training on the use of force, to stop the conduct (FAC ¶¶ 54-55); (4) the lack of adequate supervision demonstrates an informal custom or policy tolerating and promoting excessive use of force (FAC ¶ 55); and (5) plaintiffs were harmed by the wrongful conduct of the individual defendants (FAC ¶ 56).

Both Claim Two and Claim Nine allege an informal policy of deliberate indifference based on Danville and the County's notice of a pattern or practice of constitutional violations by the individual defendants and other law enforcement personnel.  *See* FAC ¶¶ 22, 53.  However, plaintiffs have alleged facts relating only to their interaction with the individual defendants.  They have not alleged any facts demonstrating a pattern or practice of constitutional violations, or how defendants received notice of such a pattern or practice.  *Compare Starr*, 652 F.3d at 1216 (finding

United States District Court
Northern District of California

7

1  sufficient the plaintiff's allegations of specific and numerous other incidents involving conduct

2  similar to that complained of by the plaintiff, provision of notice of all these incidents, and notice

3  of systemic problems in the county jails through several reports); *Mateos-Sandoval*, 942 F. Supp.

4  2d at 895-97, 900 (finding sufficient the plaintiffs' allegations of the specific content of a policy,

5  custom, or practice that led to similar constitutional violations in two separate incidents) *with*

6  *Lewis v. Cnty. of San Diego*, No. 13-cv-2818, 2015 WL 474279, at *6 (S.D. Cal. Feb. 5, 2015)

7  (rejecting plaintiffs' argument that "they are not required to plead evidence to demonstrate a

8  pattern or practice by identifying other instances in which someone was similarly treated by

9  defendants").  Instead, plaintiffs simply allege:  (1) the existence of such a pattern or practice, (2)

10 that defendants had notice, and (3) that defendants failed to adequately respond.  This recites the

11 elements of a *Monell* claim and is plainly insufficient.  *See AE*, 666 F.3d at 637.  The Court

12 therefore finds that Claims Two and Nine are insufficiently pled.

13        Claim Three appears to assert a policy or custom of inadequate training and supervision.

14 "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the

15 failure to train amounts to deliberate indifference to the rights of persons with whom the police

16 come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  In order for municipal

17 liability to attach, the failure to train must reflect "a 'deliberate' or 'conscious' choice by a

18 municipality."  *Id.* at 389.  Such deliberate indifference may be shown, for instance, where "in

19 light of the duties assigned to specific officers or employees the need for more or different training

20 is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that

21 the policymakers of the city can reasonably be said to have been deliberately indifferent to the

22 need."  *Id.* at 390.  A "sufficiently inadequate" failure to supervise may also establish deliberate

23 indifference.  *Dougherty*, 654 F.3d at 900 (citing *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235

24 (9th Cir. 1989)).  "Mere negligence in training or supervision, however, does not give rise to a

25 *Monell* claim."  *Id.*  Plaintiffs have not alleged facts showing an obvious need for more training

26 and supervision reflecting deliberate indifference by the defendants.  Thus, Claim Three is not

27 adequately pled.

28        Accordingly, the Court GRANTS the motion to dismiss plaintiffs' *Monell* claims against

Danville and the County, with leave to amend.

## II.     State Law Claims (Claims Four, Five, Six, Seven, Eight, and Ten)

Plaintiffs allege six state law claims against defendants: (1) California Civil Code § 52.1(b); (2) false arrest; (3) false imprisonment; (4) intentional infliction of emotional distress ("IIED");[6] (5) negligence; and (6) conspiracy.  Defendants argue that the state law claims cannot be alleged against Danville and the County, but for differing reasons.  Also, defendants argue that plaintiffs have failed to allege sufficient facts to state a claim for negligence, and even if the facts are sufficient, such a negligence claim cannot be brought against municipal entities.  The Court addresses each of these issues separately.

### A.     Danville

Defendants argue that Danville cannot be liable for the asserted state law claims because Danville is not the employer of the individual defendants under the contract, and is not liable for their acts as independent contractors.  Dkt. No. 37 at 11.  Plaintiffs argue that (1) the employment status of the individual defendants is not determinative of Danville's liability, (2) that there are facts indicating that the individual defendants are servants or employees of Danville, and (3) that it is premature to make a factual determination about the individual defendants' employment status at this stage of the litigation.  Dkt. No. 44 at 7-10.  The Court finds plaintiffs' second and third points persuasive.

The contract states that the provided law enforcement personnel are employees of the County.  Dkt. No. 35, Ex. A at 26.[7]  However, the contract also provides that personnel assigned to Danville must wear "distinctive badges, insignia, and name tags as provided by [Danville]."  *Id.* at

---

[6] Defendants assert that they are "not truly defendants" to the IIED claim because they are mentioned only in the claim's heading, and not in the relevant paragraphs detailing the claim. Dkt. No. 37 at 2 n.2.  Plaintiff does not address this statement.  Because Danville and the County are listed in the relevant paragraphs, the Court draws the reasonable inference that the IIED claim is brought against Danville and the County, and construes the claim as such.  *See Usher*, 828 F.2d at 561 (requiring the Court to draw all reasonable inferences in plaintiff's favor on a motion to dismiss).

[7] All citations to this exhibit reference the ECF-generated page numbers.

United States District Court
Northern District of California

27.  Officers are assigned to Danville for at least four years, "barring promotion, termination, or transfer *acceptable* to [Danville]." *Id.* (emphasis added).  The contract further indicates that the County and Danville must review service goals, objectives, and performance standards proposed by the County "for the purpose of obtaining a mutual agreement[.]" *Id.*  All of these provisions indicate some right to control by Danville.  Thus, the Court cannot say with certainty, at this stage of litigation, that the individual defendants are not employees of Danville.

Whether Danville is an employer of any of the individual officers is currently a factual dispute ill-suited for resolution on a motion to dismiss.  Accordingly, the Court DENIES the motion to dismiss the state law claims against Danville.

### B.      The County

Defendants argue that the state law claims against the County fail because the plaintiffs did not comply with the California Government Claims Act (Cal. Gov't Code § 810 *et seq.*).  Dkt. No. 37 at 12.  Plaintiff argues that they have complied with the Act, and request leave to amend the complaint should the Court find noncompliance.  Dkt. No. 44 at 15.

Before filing suit on tort claims against certain state actors, a plaintiff must file a government claim pursuant to the California Government Claims Act.  Cal. Gov't Code § 810 *et seq*.  A plaintiff is required to present "[a] claim . . . or an application to the public entity for leave to present a late claim" to the public entity by either "(1) [d]elivering it to the clerk, secretary or auditor thereof," or "(2) [m]ailing it to the clerk, secretary, auditor, or to the governing body at its principal office."  Cal. Gov't Code § 915(a).  A plaintiff must present this claim "not later than six months after the accrual of the cause of action."  Cal. Gov. Code § 911.2.

A plaintiff must present this claim "[e]ven if the public entity has actual knowledge of the facts that might support a claim."  *DiCampli-Mintz v. Cnty. of Santa Clara*, 55 Cal.4th 983, 990 (Cal. 2012).  A "failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity."  *State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1239 (Cal. 2004).  In addition, the "failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a

demurrer for failure to state a cause of action." *Id.*

Alternatively, the claim presentation requirement can be satisfied even if it does not meet the requirements of California Government Code § 915(a) if, within the proper time period, a claim is "is actually received by the clerk, secretary, auditor or board of the local public entity." Cal. Gov't Code § 915(e).

Plaintiffs state that they were unaware that the individual defendants were deputies from the County assigned to Danville and, therefore, filed a claim with Danville. Dkt. No. 44 at 12. Plaintiffs also point to the contract between Danville and the County, which requires the County to indemnify Danville for any liability resulting from the conduct of the provided law enforcement personnel. *Id.*; *see also* Dkt. No. 35, Ex. A at 26. Plaintiffs argue that it can be inferred from the indemnification clause that the claim submitted to Danville was forwarded to the County. Dkt. No. 44 at 12. And attached to plaintiffs' counsel's declaration are exhibits showing that the claim submitted to Danville was forwarded to a board member of the County. *Id.* at 13; *see also* Dkt. No. 44, Decl. of Panos Lagos, Exs. C, D, and E. Thus, plaintiffs argue that they satisfied California Government Code § 915(e).

However, plaintiffs have not alleged these facts in their complaint, nor have they alleged facts to support relief from the filing requirement pursuant to Government Code § 946.6(c). Further, it is not clear whether the person who received the forwarded claim is a statutorily designated recipient under California Government Code § 915(e).[8] "If an appropriate employee or board never receives the claim, an undelivered or misdirected claim fails to comply with the statute." *DiCampli-Mintz*, 55 Cal.4th at 992.

Thus, based on allegations in the complaint, plaintiffs have not demonstrated compliance with the California Government Claims Act.

Plaintiffs alternatively argue that defendants are equitably estopped from arguing plaintiffs' noncompliance. Dkt. No. 44 at 14. Under California law,

---

[8] Although plaintiffs argue that Exhibit E to the Declaration of Panos Lagos demonstrates that the recipient is a board member of the County, it is not clear to the Court whether the exhibit shows that the recipient is an actual board member of the County or is instead a board member of the CSAC Excess Insurance Authority, which represents the County.

1

2

3

4

> A public entity may be estopped from asserting the limitations of the tort claims statutes where its agents or employees *have prevented or deterred the filing of a timely claim by some affirmative act*. The required elements for an equitable estoppel are: (1) the party to be estopped must be apprised of the facts; (2) the party to be estopped must intend his or her conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) the other party must rely upon the conduct to his or her injury.

5   *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1064 (Cal. Ct. App. 2013), *review*

6   *denied* (May 1, 2013) (citing *Munoz v. State of California, supra*, 33 Cal. App. 4th 1767, 1785

7   (Cal. Ct. App. 1995)) (emphasis in original) (internal quotation marks and citation omitted).  As

8   plaintiffs note, the individual defendants represented themselves as Danville police officers by

9   wearing Danville badges, insignia, and name tags.  *See* Dkt. No. 44 at 14.  However, as defendant

10  correctly argues, plaintiffs have not alleged any affirmative acts by defendants that were intended

11  for the plaintiffs to act upon.  *See* Dkt. No. 47 at 11.  Thus, equitable estoppel is not applicable

12  here.

13          Accordingly, the Court GRANTS the motion to dismiss the state law claims against the

14  County, with leave to amend the complaint asserting facts that plaintiffs complied with the

15  California Government Claims Act.

16

17          **C.      Negligence Claim against Danville and the County (Claim Eight)**

18          Defendants argue the negligence claim fails for two reasons: (1) a claim for this type of

19  negligence cannot be asserted against municipal entities, such as Danville and the County, and (2)

20  plaintiffs failed to allege sufficient facts to state a plausible claim.  Dkt. No. 37 at 11 n.11.

21  Plaintiffs did not respond to this argument in their opposition brief.  *See* Dkt. No. 44.

22          Defendants are correct that a direct liability negligence claim cannot be brought against a

23  municipality.  "California courts have repeatedly held that there is no statutory basis for direct

24  claims against a public entity for negligent hiring and supervision practices."  *Shoval v. Sobzak*,

25  No. 09-cv-01348, 2009 WL 2780155, at *4 (S.D. Cal. Aug. 31, 2009) (collecting cases).

26          However under California law, a plaintiff may bring a derivative liability claim for

27  negligence against a municipality.  *See AE*, 666 F.3d at 638 ("California public entities, including

28  local governments, are derivatively liable for the negligent acts or omissions of public employees

United States District Court
Northern District of California

within the scope of their employment." (citing Cal. Gov't Code § 815.2(a)).   Plaintiffs appear to be asserting this derivative—not direct—liability negligence claim against Danville and the County.   Plaintiffs allege that Danville and the County are liable under California Government Code § 815.2 for the negligence committed by the individual defendants in the scope of their employment with Danville and/or the County, and/or as independent contractors under California Government Code § 815.4.  FAC ¶ 50.

No motion to dismiss the negligence claim against the individual defendants has been submitted.  Thus, the derivative liability negligence claim against Danville and the County must be allowed.  *See AE*, 666 F.3d at 638 (reversing dismissal of derivative liability negligence claim because "[a]s long as [the plaintiff] is permitted to allege that County employees were negligent, he must also be permitted to allege that the County is derivatively liable pursuant to California Government Code § 815.2(a)").   Accordingly, the Court DENIES the motion to dismiss the negligence claim against Danville.  But because the Court dismissed the state law claims against the County, *supra*, the negligence claim against the County must also be dismissed.  If plaintiffs' amend their complaint to properly allege compliance with the California Government Claims Act, they may reassert this derivative liability negligence claim against the County.


### III.    Injunctive and Declaratory Relief (Claim Eleven)

Defendants argue that the claim for injunctive and declaratory relief fails because plaintiffs' *Monell* claims also fail.  Dkt. No. 37 at 10.  Plaintiffs contend that the claim for injunctive and declaratory relief is based on the alleged violation of California Civil Code § 52.1(b) and the *Monell* claims.  Dkt. No. 44 at 6.  Defendants respond that the FAC does not support a claim for prospective relief based on the state law claim and, even if it does, the state law claim also fails.  Dkt. No. 47 at 5.  Defendants did not move to dismiss this claim under Federal Rule of Civil Procedure 12(b)(1) for lack of standing, but "[f]ederal courts are required *sua sponte* to examine jurisdictional issues such as standing."  *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (citing *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002)).

United States District Court
Northern District of California

To have standing for prospective relief, a plaintiff must allege a "real or immediate threat" exists that he will be wronged again. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). The "threatened injury must be certainly impending to constitute injury in fact, and allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (internal citations omitted). Rather than requiring literal certainty, the Supreme Court has sometimes framed the injury requirement as a "substantial risk" that the harm will occur. *Munns v. Kerry*, 782 F.3d 402, 409 (9th Cir. 2015) (citing *Clapper v. Amnesty Int'l USA*, 133 S. Ct. at 1150 n.5). The alleged threat cannot be "conjectural" or "hypothetical," *Lyons*, 461 U.S. at 101-02, but must be a "credible threat of future injury," *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 528-29 (9th Cir. 1989) (quotation marks and citations omitted). "[P]ast exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects." *Cuviello v. City & Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1080 (N.D. Cal. 2013) (citing *O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974)). A plaintiff "must demonstrate that [he is] realistically threatened by a *repetition* of the violation" at issue. *Gest v. Bradbury,* 443 F.3d 1177, 1181 (9th Cir. 2006) (quotation marks and citations omitted, emphasis in original).

Plaintiffs allege that, until prospective relief is granted,

Plaintiffs have reason to believe that their rights to be free from excessive force, illegal searches of their persons, illegal stops and/or false arrest and/or imprisonment will continue to be threatened and Plaintiffs will suffer serious and irreparable injury by the threat of loss of their fundamental Constitutional rights.

FAC ¶ 66. This alleged threat is nothing more than "conjectural" or "hypothetical." *See Lyons*, 461 U.S. at 101-02. Plaintiffs have not alleged any facts demonstrating that they are "realistically threatened" with future Constitutional violations. *See Gest*, 443 F.3d at 1181. "Absent a sufficient likelihood that [they] will again be wronged in a similar way, [plaintiffs are] no more entitled to an injunction than any other citizen of [the County]; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *See Lyons*, 461 U.S. at 111. Thus, the Court GRANTS the motion to dismiss the claim for injunctive and declaratory relief, with leave to

1    amend.

2

3                                   **CONCLUSION**

4          For the foregoing reasons, the Court GRANTS the motion to dismiss the *Monell* claims

5    (Claims Two, Three, and Nine), GRANTS the motion to dismiss the state law claims against the

6    County (Claims Four, Five, Six, Seven, Eight, and Ten), and GRANTS the motion to dismiss the

7    claim for injunctive and declaratory relief (Claim Eleven).  The Court DENIES the motion to

8    dismiss the state law claims against Danville (Claims Four, Five, Six, Seven, Eight, and Ten).

9    Plaintiffs are given leave to amend the complaint, to cure the outlined defects in their present

10   complaint if they can.  **Plaintiffs' second amended complaint must be filed by January 15,**

11   **2016.**

12

13         **IT IS SO ORDERED**.

14   Dated: December 16, 2015

15                                          _____

16                                          SUSAN ILLSTON
                                            United States District Judge
17

18

19

20

21

22

23

24

25

26

27

28